# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| BRENDA FREDRICK, *individually and on behalf of all others similarly situated*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:19-cv-418 |
| v. | ) ) | Judge Atchley |
| | ) ) | Magistrate Judge McCook |
| CENTRAL FLORIDA INVESTMENTS, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

---

## MEMORANDUM AND ORDER APPROVING SETTLEMENT

---

Before the Court is an Unopposed Motion for Settlement Approval [Doc. 88], seeking approval of the proposed settlement of Plaintiffs' claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219; and Plaintiffs' Motion for Attorney Fees and Costs [Doc. 90]. Defendants responded to the Motion for Attorney Fees and Costs [Doc. 98] and Plaintiffs replied. [Doc. 109]. For the following reasons, the Unopposed Motion for Settlement Approval [Doc. 88] is **GRANTED**; and Plaintiffs' Motion for Attorney Fees and Costs is **GRANTED IN PART**.

## I.      BACKGROUND

On October 23, 2019, Named Plaintiff Brenda Fredrick brought this FLSA lawsuit claiming that Defendants failed to properly pay her and other similarly situated employees

overtime compensation when they worked over (40) hours in a workweek. [Doc. 1].[1] Plaintiffs worked for Defendants as In-House or Dayline Sales Representatives at Westgate's Smoky Mountain Resort & Spa in Tennessee and were responsible for selling fractional or interval real estate units or timeshares at the resort. [*Id*.]. Plaintiffs participated in sales presentations on the resort's premises and provided tours to prospective customers with the goal of selling timeshare units. [*Id*.].

Plaintiffs allege Defendants misclassified them as independent contractors, rather than employees; and, consequently, Defendants failed to pay them an overtime premium for their hours worked over (40) in a workweek. [*Id*.]. However, Defendants maintain that Plaintiffs were independent contractors and, thus, they are not entitled to obtain relief for the alleged FLSA violations. [Docs. 27-29]. Alternatively, Defendants claim that Plaintiffs were properly compensated. [*Id*.].

## II. SETTLEMENT APPROVAL

### A. Applicable Law

"Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement." *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (quoting *Crawford v. Lexington-Fayette Urban County Gov.*, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008)). "The central purpose of the FLSA is to protect covered employees against labor conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Id*. (quoting 29 U.S.C. § 202)

---

[1] For consistency and ease of reference, record citations are to the CM/ECF-stamped document and page number, not to the internal pagination of any filed document. Where possible, citation is made to more specific subdivisions within a document.

Because Congress recognized an imbalance of bargaining power between employers and wage-hour employees, the FLSA provisions are mandatory and are not subject to negotiating, waiver, or modification by contract or settlement. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). However, there are two narrow circumstances in which settlement of FLSA claims may be permissible. *See Lynn's Food Stores v. U.S.*, 679 F.3d 1350, 1354 (11th Cir. 1982). The first exception allows an employee to settle FLSA claims when the settlement is supervised by the Department of Labor; and the second exception allows federal district courts to approve settlement of lawsuits brought in federal district court pursuant to §216(b) of the FLSA. *Id*.

The second exception is applicable here. Plaintiffs brought their claims pursuant to § 216(b) of the FLSA and now propose a settlement agreement for the Court's approval. In reviewing the proposed settlement, the Court must find the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id*. at 1355; *see also Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019). Accordingly, the Court must determine both that (1) the parties were engaged in a bona fide dispute and (2) the settlement is a fair and reasonable compromise of the issues. *Id*.

### B. Analysis

After reviewing the filings and the evidence in the record, including the proposed settlement agreement, the Court is satisfied that the parties were engaged in a bona fide dispute and the proposed settlement is a fair and reasonable compromise of the issues. Accordingly, for the reasons set forth below, the Unopposed Motion for Settlement Approval [Doc. 88] is **GRANTED**.

First, the Court finds that the parties were engaged in a bona fide dispute. "A bona fide

dispute exists when there are legitimate questions about the existence and extent of a defendant's FLSA liability." *O'Bryant v. ABC Phones of North Carolina, Inc.*, 2020 WL 7634780, at *7 (W.D. Tenn. Dec. 22, 2020) (internal citations omitted). "A proposed settlement resolves a bona fide dispute when it reflects a reasonable compromise over issues, such as FLSA coverage [], that are actually in dispute, rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Id*. (internal citations omitted).

Here, a bona fide dispute exists concerning Defendants' liability under the FLSA. Plaintiffs claim that they were misclassified as independent contractors; and thus, Defendants failed to pay them an overtime premium as required under the FLSA. [Doc. 1]. Defendants deny the material allegations and maintain that Plaintiffs were properly compensated under the FLSA. [Docs. 27, 28, 29].

The parties actively litigated this dispute. Following extensive negotiations, the parties filed a Stipulation for Conditional Certification [Doc. 45], and the Court granted conditional certification pursuant to 29 U.S.C. § 216(b). [Doc. 46]. Notice then issued to potential opt-in plaintiffs, and a total of ninety-eight individuals joined this action. Four Plaintiffs subsequently withdrew [Docs. 63, 87]; and twenty-three Plaintiffs were found ineligible because their claims did not meet the collective definition. The parties engaged in written discovery and document production. [*Id*.]. The parties reviewed Defendants' personnel files, payroll records, and attendance logs to evaluate their respective positions. [*Id*.]. The parties then began negotiations that spanned over several months. [Doc. 88 at 11]. The parties agree that Defendants' records showed some unpaid overtime wages; however, Defendants' records raised two new issues: (1) whether Plaintiffs worked overtime hours that were unrecorded; and (2) whether a two-year or three-year statute of limitations is applicable. [*Id*. at 10-11]. Nevertheless, given the time, expense,

uncertainty, and risks associated with continued litigation, the parties reached a settlement of these matters. [*Id*. at 11].

Accordingly, as demonstrated above, the Court concludes that the proposed settlement resolves bona fide factual and legal disputes regarding the existence and extent of Defendants' liability under the FLSA.

Second, the Court finds that the proposed settlement is a fair and reasonable compromise of the issues. The Sixth Circuit considers several factors in deciding whether a FLSA settlement is fair and reasonable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Does 1-2*, 925 F.3d at 894-95 (citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *O'Bryant*, 2020 WL 7634780, at *8. Here, the factors weigh in favor of approving the proposed settlement.

As to the first factor, the parties entered into a settlement agreement following intensive arm's length negotiations; and both parties were represented by experienced counsel. [Doc. 88 at 12]. *See Scobey v. General Motors, LLC*, 2021 WL 5040312, at *3 (E.D. Mich. Oct. 28, 2021) ("The fact that Plaintiffs were represented by experienced counsel supports the conclusion that the settlement was a product of an arms' length transaction.") Further, the parties agree that the settlement represents good value for Plaintiffs' claims: Plaintiffs will receive over (60%) of their liquidated damages, each individual will receive a $50.00 minimum payment, in exchange for a limited release of claims relating to minimum wage, overtime pay, liquidated damages, penalties, interest, and attorneys' fees claims under the FLSA only. [*Id*]. Therefore, given these

facts, and absent evidence to the contrary, the Court finds there is no risk of fraud or collusion in the proposed settlement agreement. *See Ross v. Jack Rabbit Servs., LLC*, 2016 WL 7320890, at *3 (W.D. Ky. Dec. 16, 2016) (internal citations omitted) ("In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel.")

As to the second factor, "employment cases, in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Scobey*, 2021 WL 5040312, at *3 (internal citations omitted). The parties note that many of the contested issues in this matter are fact-intensive; thus, it is possible that this case would have to be resolved at trial rather than on summary judgment. [Doc. 88 at 13]. This matter has been pending for nearly three years; and if the litigation continued, the parties would have to complete further discovery and engage in significant motion practice. [*Id*]. Then, dependent on the Court's rulings, the parties might have to prepare for a complex and lengthy jury trial. [*Id*]. Accordingly, the Court finds the proposed settlement eliminates the substantial risks and costs the parties would have to endure if this litigation continued.

As to the third factor, the parties participated in written discovery, and Defendants produced Plaintiffs' personnel files and pay records. [Doc. 88 at 14]. The parties relied on this documentary evidence to evaluate their respective positions; and Plaintiffs' Counsel further investigated Defendants' records by interviewing their clients to confirm the accuracy of the records. [*Id*.]. The parties began settlement discussions after exchanging discovery; and the parties represent that Defendants' records provided them with enough information to calculate damages. [*Id*.]. Thus, the Court is satisfied that the parties exchanged sufficient discovery to provide them with an adequate basis to evaluate their claims and defenses before resolving this matter.

As to the fourth factor, the likelihood of Plaintiffs' success on the merits and the amount of damages they would ultimately be awarded are uncertain. The parties firmly believe in the merits of their respective positions and there are many factual issues that make it hard for the parties to gauge their likelihood of success. [Doc. 88 at 11-12]. As explained above, there are considerable risks for both sides regarding the merits and damages. Therefore, given the uncertainty of recovery in this case, the Court finds that this proposed settlement is fair and reasonable.

As to the fifth factor, counsel agrees that the settlement is fundamentally fair, adequate, and reasonable. [Doc. 88 at 15]. Plaintiffs' Counsel practices at a firm with extensive experience in class action and wage-and-hour litigation [*Id*. at 15]. Similarly, Defendants' Counsel is experienced in wage-and-hour litigation similar to this case. [*Id*. at 12]. Accordingly, the Court finds counsels' opinion that the settlement is fair and equitable is entitled to deference; and this factor weighs in favor of approval.

As to the sixth factor, the parties note that "[e]ach Plaintiff was given the opportunity to reject the settlement offer in writing or accept it by doing nothing. No Plaintiff has rejected the settlement." [Doc. 88 at 15]. Therefore, the Court is satisfied that this factor supports approval of the proposed settlement. *See Hosp. Authority of Metro. Gov't of Nashville & Davidson Cty., Tennessee v. Momenta Pharms., Inc.*, 2020 WL 3053467, at *2 (M.D. Tenn. May 29, 2020) ("[t]he reaction of absent class members weighs in favor of approval, as no class members objected.")

As to the seventh factor, "[c]ourts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Does 1-2*, 925 F.3d at 899 (internal citations omitted). Thus, "[i]f a settlement in an employee FLSA suit does reflect a

7

reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] the district court [may] approve the settlement to promote the policy of encouraging settlement of litigation." *Brown v. Henley Propane, Inc.*, 2020 WL 4597077, at *2 (E.D. Tenn. Aug. 11, 2020) (internal citations omitted). As demonstrated above, the proposed settlement ends a potentially complex litigation process; and the proposed settlement reflects a reasonable compromise over disputed factual and legal issues concerning FLSA coverage. Thus, the Court finds the proposed settlement is in the public interest.

Finally, in approving the settlement, the parties ask the Court to approve a service payment of $1,000.00 to the Named Plaintiff Brenda Fredrick. [Doc. 88 at 16]. Counsel explains Named Plaintiff contributed to the lawsuit by initiating the litigation, responding to Plaintiffs' Counsel's questions, and responding to written discovery, including interrogatories and requests for production. [*Id.*]. Counsel represents that the service payment "appropriately compensates the Named Plaintiff for her time and effort protecting the interests of the collective and contributing to the litigation process" and is "reasonably given its modest size, and the award does not significantly reduce the amount of settlement funds available to the remaining Plaintiffs." [*Id.* at 16-17].

"The purpose of [service] payments are to compensate named plaintiffs for the services they provided and risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Salinas v. U.S. Xpress Enterprises, Inc.*, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (internal citations omitted). "By bringing suit against a large company and having documents publicly filed with [their] name on them, named plaintiffs who assist in class action litigation [take] on certain risks. By bringing suit against a major company they risk their good will and job security in the industry for the

benefit of the class as a whole." *Id*. (collecting cases).

The Court finds that the proposed service payment of $1,000.00 to Named Plaintiff Brenda Fredrick is appropriate and should be approved. As the parties note, Named Plaintiff undertook a risk in filing this lawsuit against her employer, and substantially assisted in the litigation by providing relevant information and closely communicating with counsel. Further, the proposed service payment is similar to other collective and class action incentive awards approved by courts in this Circuit. *Alan Bernardez, et al., v. Firstsource Solutions USA, LLC*, 2022 WL 1156972, at *4 (W.D. Ky. Apr. 19, 2022) (collecting cases) (awarding a service payment of $1,000.00 to two named plaintiffs to recognize their efforts and risks undertaken in initiating and assisting in the litigation); *O'Bryant v. Pillars Protection Servs., LLC*, 2020 WL 7486712 (S.D. Ohio Dec. 17, 2020) (approving a service award of $1,000.00 to each named plaintiff).

In sum, the relevant factors weigh in favor of approving this proposed settlement. The Court finds that the settlement reflects a reasonable compromise of bona fide disputes; and is fair and reasonable. Accordingly, the Unopposed Motion for Settlement Approval [Doc. 88] is **GRANTED** and the proposed settlement agreement is **APPROVED**.

### III. ATTORNEY FEES AND COSTS

#### A. Applicable Law

Pursuant to § 216(b) of the FLSA, the court presiding over a FLSA lawsuit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Thus, "[a]n award of attorney's fees under 216(b) is mandatory." *Smith v. Serv. Master Corp.*, 592 F. App'x. 363, 367 (6th Cir. 2014).

An award of attorneys' fees and costs must be "reasonable under the circumstances."

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). "A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999); *see also Vanderhoef v. Dixon*, 2020 WL 4673464, at *3 (E.D. Tenn. Aug. 12, 2020) (explaining that reasonable hourly rates are those "sufficient but not greater than necessary to entice competent counsel to perform the work required…"). The party seeking attorneys' fees bears the burden of demonstrating the reasonableness of the hourly rates applied and the hours billed. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007).

The Sixth Circuit has approved the "lodestar" method for calculating attorneys' fees. *See Rembert v. A Plus Home Health Care Agency, LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (internal citations omitted) (explaining "the lodestar method yields a fee that is presumptively sufficient to achieve [the reasonableness] objective.") "To calculate the lodestar, the court first determines counsel's reasonable hourly rate(s) and the number of hours that counsel reasonably expended on the case." *Id*. And, ultimately, "[m]ultiplying reasonable rates times reasonable hours yields the lodestar." *Id*.

In determining the appropriate amount of attorneys' fees under the FLSA, courts may consider several factors: (1) time and labor required; (2) novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (6) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Salinas*, 2018 WL 1477127 at *9 (citing *Hensley et*

*al., v. Eckerhart et al.*, 461 U.S. 424, 433 (1983)).

## B. Analysis

Plaintiffs ask the Court to approve their requests for $112,041.00 in attorneys' fees and $2,947.69 in out-of-pocket litigation costs. [Doc. 90]. Defendants do not object to Plaintiffs' request for out-of-pocket litigation costs. [Doc. 98 at 1, n.1]. Accordingly, Plaintiffs' request for **$2,947.69 in out-of-pocket litigation costs** is **GRANTED** in full.

However, Defendants contend that the requested attorneys' fees are unreasonable and ask the Court to reduce the fee award. [Doc. 98 at 1-2]. Defendants challenge the requested fees on three primary grounds. First, Defendants urge the Court to apply a blanket reduction to the lodestar calculation to account for Plaintiffs' limited degree of success on their FLSA claims. [*Id*.]. Second, Defendants contend that the hourly rates are excessively high in light of the local market rate in the Eastern District of Tennessee and case-specific considerations. [*Id*.]. Third, Defendants argue that Plaintiffs engaged in improper billing practices and thus certain hours must be excluded. [*Id*.].

Plaintiffs' Counsel relied on the lodestar method in calculating their attorneys' fees. [Doc. 90]. Plaintiffs claim that $112,041.00 is the product of reasonable hourly rates and a reasonable number of hours incurred. [*Id*.]. Defendants do not dispute using the lodestar method to calculate attorneys' fees. [Doc. 98]. Instead, Defendants merely object to the underlying factors. Accordingly, the Court will address each of Defendants' challenges to the requested attorneys' fees under a lodestar analysis.

### 1.   *Blanket Reduction*

Defendants urge the Court to apply a blanket reduction to the lodestar calculation based on the limited degree of success obtained by Plaintiffs. [Doc. 98 at 23-25]. Defendants contend

that Plaintiffs' requested fees are grossly disproportionate to the outcome of this litigation; and Plaintiffs should be limited to recovering fees equaling the class award of $34,500 "and no more." [*Id*.].

As an initial matter, Defendants' suggestion that Plaintiffs' Counsel's fees should equal the settlement amount of $34,500 "and no more" is rejected. [Doc. 98 at 25]. Proportionality between fees and damages is not required. "When the maximum recovery for an employee is relatively small because the unpaid overtime is relatively minor, an attorney may reasonably recover more than the employee." *Grey v. Evolution Wireless, Inc.*, 2019 WL 13195490, at *3 (E.D. Tenn. Nov. 4, 2019) (internal citations omitted) (collecting cases); *Salinas*, 2018 WL 1477127, at *8 (collecting cases); *Williams v. Bevill*, 2016 WL 773230, at *2 (E.D. Tenn. Feb. 8, 2016). Accordingly, the Court will not place an undue emphasis on the monetary amount of recovery obtained by the successful Plaintiffs in this case. *See Fegley v. Higgins*, 19 F.3d 1126, 1134-25 (6th Cir. 1994) ("Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [under the FLSA] encourages the vindication of congressionally identified policies and rights.")

Defendants are correct that the Court has wide discretion to reduce the amount of fees based upon a plaintiff's "limited success." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) "Where the plaintiff achieved only 'limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.'" *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (quoting *Hensley*, 461 U.S. at 435). However, "when claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys fees they should not be treated as distinct claims, and the cost of litigating related claims should not be reduced." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008)

(quoting *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1169 (6th Cir. 1996)).

The Court will not reduce the fee award across the board to account for Plaintiffs' limited degree of success. The individual Plaintiffs asserted identical claims against Defendants for unpaid overtime wages based on the same legal theory (misclassification). Though twenty-seven opt-in Plaintiffs were dismissed from the case (four voluntarily and twenty-three involuntarily), the Court does not find this warrants a reduction of fees. The dismissed opt-in Plaintiffs asserted the same FLSA claims as the remaining Plaintiffs; and thus, the Court cannot easily disentangle the time dedicated to the unsuccessful claims from time spent on successful claims. Plaintiffs' Counsel's time and effort contributed to the benefit of the case as a whole rather than to the benefit of any individual opt-in Plaintiff. Specifically, Plaintiffs' Counsel's work dedicated to investigating the claims, filing the Complaint, negotiating conditional certification, handling FLSA notice, and serving written discovery request were the same regardless of the success of the dismissed opt-in Plaintiffs.

Accordingly, the Court declines to apply a blanket reduction to the lodestar calculation based on Plaintiffs' limited success.

### 2. *Reasonable Hourly Rates*

#### a. <u>Attorneys</u>

Plaintiffs seek approval of the following hourly rates for the attorneys that represented them: (1) $525.00 for Rachhana Srey—Partner with Nichols Kaster, PLLP (Minnesota law firm); (2) $325,00 for Caroline Bressman—Associate with Nichols Kaster; (3) $475.00 for David Burkhalter—Partner at the Burkhalter Law Firm (Knoxville law firm); and (4) $265.00 for Alex Burkhalter—Associate with the Burkhalter Firm. [Doc. 90 at 6].[2]

---

[2] Plaintiffs initially sought to recover fees for attorney Zachary Burkhalter at the hourly rate of $215.00. [Doc. 90 at 6]. However, "[a]s a compromise and given the nominal amount that he billed to this litigation," Plaintiffs agreed to

First, Defendants argue that Alexander Burkhalter's billed time should be eliminated altogether, as Plaintiffs have failed to offer proof of his qualifications or experience and this omission should be considered a waiver of the fee request. [Doc. 98 at 7]. However, Defendants have not provided the Court with any authority in support of their position; and, as explained below, Plaintiffs have provided the Court with satisfactory evidence regarding Alexander Burkhalter's qualifications and experience.

Second, Defendants contend that the requested rates are excessive in light of the local market rates in this District. [Doc. 98 at 8-14]. Defendants claim the local hourly market rate is $350.00 for the work performed by Rachhana Srey and David Burkhalter; and $215.00 for the work performed by Caroline Bressman. [*Id*. at 13-14].

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). "In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes is the legal community within the Court's territorial jurisdiction or venue." *Bryant v. McCoig*, 2020 WL 1545908, at *1 (E.D. Tenn. Feb. 18, 2020) (internal citations omitted). "The appropriate hourly rate may not, however, exceed the amount necessary to cause competent counsel to perform the work required." *Id*. (internal citations omitted).

Plaintiffs urge the Court to consider a national market rate for the fees requested by Rachhana Srey and Caroline Bressman. [Docs. 90 at 5, 109 at 7]. The Sixth Circuit has acknowledged that counsel from outside of the venue of the court of record "may be entitled to claim the rate of an 'out-of-town specialist.'" *Carty v. Metro. Life Ins. Co.*, 2017 WL 660680, at

---

"withdraw their request for Zachary Burkhalter's billed time, which totals **0.9 hours**." [Doc. 109 at 10]. Accordingly, this time will be excluded from the ultimate attorneys' fee award.

*6 (M.D. Tenn. Feb. 17, 2017) (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)). In evaluating such fee request, the court must determine "'(1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation.'" *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016) (citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)). "If competent counsel was readily available locally at a lower charge or rate, the district court may apply local market rates to the services provided by the out-of-town specialist." *Id.* (citing *Hadix*, 65 F.3d at 535, 536).

Here, the Court begins, and ends, with the first prong set forth in *Hadix*. Plaintiffs have failed to establish that it was reasonable to hire an out-of-town specialist in the first instance. The record is "devoid of any suggestion that local counsel made any attempt to investigate the availability of competent counsel in the local market." *Hadix*, 65 F.3d at 535. Instead, Plaintiffs merely explain "[t]he Burkhalter Law Firm called upon Nichols Kaster to partner on this case because of the firm's experience in FLSA collective action litigation and its resources to litigate class and collective actions, no matter the size." [Doc. 109 at 7].[3] However, as the Sixth Circuit recognized in *Hadix*, Plaintiffs are "not guarantee[d]… the best counsel in the country;" but are only "guarantee[d]…competent counsel." 65 F.3d at 535. Evidence that Rachhana Srey and Caroline Bressman are employed by a law firm with expertise and a national reputation in wage and hour class and collective actions does not demonstrate that such expertise was reasonable under these circumstances. In fact, the Court is familiar with the local market and is certain that Plaintiffs could find competent counsel in the Eastern District of Tennessee to handle this FLSA

---

[3] Later in their brief, Plaintiffs note that Alexander Burkhalter consulted with Bryce Ashby about the need for Nichols Kaster's expertise on the case. [Doc. 109 at 14]. However, Plaintiffs provided no specific information to the Court about these communications in attempt to justify their decision to hire out-of-town counsel.

class action litigation. Therefore, the Court declines to award a national market rate to attorneys Srey and Bressman.

In deciding the appropriate hourly rates for Plaintiffs' counsel, the Court will consider "the rate that lawyers of comparable skill and experience can reasonably expect to command" in the Eastern District of Tennessee. *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Defendants cite four cases to support their position that reasonable hourly rates in the Eastern District of Tennessee range from $200.00-$350.00 [Doc. 98 at 8-9]. However, the Court is not persuaded by this argument. First, there is no fixed range for hourly rates in this District. Instead, the Court determines whether an hourly rate is "reasonable" based on several factors and case specific considerations. Second, Defendants' argument understates the range of hourly rates recently approved in this District.[4]

After a thorough review of relevant decisions in this District, the Court finds that the following hourly rates are appropriate and reasonable for Plaintiffs' counsel: **$425.00** for Rachhana Srey and David Burkhalter, **$265.00** for Alexander Burkhalter, and **$215.00** for Caroline Bressman. These rates account for the skill, experience, position (i.e., associate or partner), and reputation of the attorneys, as well as the specialized area of employment law—FLSA wage and hour class action litigation.

---

[4] *Knox Cnty, Tenn. v. M.Q.*, 2022 WL 946285, at *3 (E.D. Tenn. Mar. 29, 2022) (rejecting argument that the average hourly rate in this District is $350.00 and awarding rate of $425.00 to an attorney experienced in a complex and highly specialized area of special education law); *D.S. by R.S. v. Knox Cnty, Tenn.*, 2022 WL 885851, at *10 (E.D. Tenn. Mar. 25, 2022) (awarding fees at an hourly rate of $425.00 in light of prevailing market rate in the community for similar representation and the attorney's experience and skill in a highly specialized area); *Farmer v. Upchurch*, 2022 WL 1521521, at *5 (E.D. Tenn. Mar. 4, 2022) (approving hourly rates of $400.00 and $325.00 for partners and $185.00 for an associate from a Chattanooga law firm); *Hunter v. City of Copper Hill*, 2013 WL 5278673, at *5 (E.D. Tenn. Sept. 19, 2013) (awarding an hourly rate of $395.00 to a lead attorney "highly skilled in the practice of employment law"); *S.P, next of friend of M.P. .v Knox Cnty. Bd. of Educ.*, 2019 WL 13123384, at *3 (E.D. Tenn. Sept. 11, 2019) (approving attorneys' hourly rates of $400.00 and $275.00); *L.H. v. Hamilton Cnty Dep't of Educ.*, 356 F. Supp. 3d 713, 720-22 (E.D. Tenn. 2019) (approving hourly rate of $400.00 for a Chattanooga civil rights litigator); *Eagle Supply & Mfg., L.P. v. Bechtel Jacobs Co., LLC*, 2018 WL 5317932, at *7 (E.D. Tenn. Aug. 8, 2018) (approving hourly rates from $225.00 to $475.00 for attorneys).

David Burkhalter has been licensed for over 40 years, and practices law primarily in East Tennessee with an office located in Knoxville. [Doc. 92]. David Burkhalter has devoted the majority of his career to employment-related litigation and has participated in hundreds of employment law cases in East Tennessee. [*Id*.]. David Burkhalter avers that class actions with numerous class members can be quite complex; and thus, require attorneys with above-average skill, knowledge, and experience. [*Id*.]. David Burkhalter is a certified Civil Trial Specialist and has been listed in the Best Lawyers in America since 1993. [*Id*.].

Although David Burkhalter opines that "$475 per hour is a reasonable rate for [his] professional fees" [Doc. 92], such hourly rate is "higher than what this Court has typically allowed." *Eagle Supply & Mfg., L.P. v. Bechtel Jacobs Co., LLC*, 2018 WL 5317932, at *7 (E.D. Tenn. Aug. 8, 2018). In *Eagle Supply & Mfg.*, the Court found that an hourly rate of $475.00 was reasonable only because the "case raised novel issues of construction and federal procurement law" and the requesting attorney provided detailed information about his "professional background, years of experience, contribution to [the] case." *Id*.

This case, however, appears to be a standard FLSA wage and hour class action lawsuit. Plaintiffs have not argued that this case presented novel or complex issues that might warrant awarding an hourly rate higher than those typically approved by this Court. Nevertheless, the undersigned is familiar with David Burkhalter, as he has practiced law in Knoxville for 46 years. He is a skilled, competent lawyer with substantial experience in employment law, and is a senior partner at the Burkhalter Law Firm. Given his professional background, years of experience, skill, and reputation, the Court finds that an hourly rate at the high end of those awarded to partners in this District would be appropriate for David Burkhalter. Accordingly, the Court finds that an hourly rate of $425.00 is reasonable.

Furthermore, Rachhana Srey has been licensed for 18 years; and has practiced law exclusively at Nichols Kaster, PLLP. [Doc. 91]. Ms. Srey has devoted her career to litigating wage and hour class and collective actions; and has helped thousands of employees recover millions of dollars in unpaid wages. [*Id*. at ¶ 10) (collecting cases). Ms. Srey has tried three FLSA collective actions to verdict; and frequently speaks and presents on employment law issues, including FLSA class and collective actions. [*Id*.]. Ms. Srey is currently the Co-Chair of the Wage and Hour Committee and Practice Group of the National Employment Lawyer Association ("NELA"). [*Id*. at ¶ 13]. Ms. Srey has been named to the "Rising Stars" List by *Super Lawyers* every year from 2007 to 2018, and she was promoted to the "Super Lawyers" list from 2019 to 2021. [*Id*. at ¶ 14]. In 2021 to 2022, Ms. Srey was named one of "The Best Lawyers in America." [*Id*.].

The Court finds that Ms. Srey has demonstrated she is an accomplished attorney with extensive experience in FLSA wage and hour class action litigation. Though Ms. Srey has practiced law for less time than David Burkhalter, her practice has been more directed. David Burkhalter has "focused [his] law practice in areas of employment law, civil rights law, and personal injury law" whereas Ms. Srey has focused her practice almost exclusively in FLSA wage and hour class and collective actions. [Docs. 91, 92]. Ms. Srey has published and lectured in this field; and is active in several organizations for wage and hour attorneys. Thus, the Court finds that it would be fair to characterize Ms. Srey as a specialist in this specific area of employment law.

The Court has not found, nor have Plaintiffs cited, a case from this District awarding an hourly rate of $525.00.[5] In fact, this Court recently recognized that an hourly rate of $525.00

---

[5] Plaintiffs cite a case from the Western District of Tennessee approving a similar hourly rate for Ms. Srey. [Docs. 90 at 6, 109 at 8-9] (citing *Monroe v. FTS USA, LLC*, 2014 WL 4472720, at *10-12 (W.D. Tenn. July 28, 2014)).

for partners was "unreasonable for this District." *McPeters v. Thomas*, 2021 WL 1033240, at *9-10 (E.D. Tenn. Feb. 24, 2021). Nevertheless, based on her professional background, extensive experience in FLSA litigation of this kind, expertise, and reputation, Rachhana Srey could reasonably charge an hourly rate at the higher end of those awarded to partners in this District. Therefore, the Court finds that an hourly rate of $425.00 is reasonable.

Alexander Burkhalter has been licensed for 8 years; and practices law primarily in Knoxville, Tennessee. [Doc. 109].[6] Alexander Burkhalter is a "civil trial attorney" with a practice "focused…in nearly all employment matters" and other areas of civil litigation. [*Id.*]. Alexander Burkhalter is "a member of the Tennessee Employment Lawyers Association" and the "National Employment Lawyers Association." [*Id.*]. Alexander Burkhalter is an "associate attorney/partner" of David Burkhalter, who avers that $265.00 is a reasonable hourly rate in Knoxville for an attorney with Alexander's qualifications and experience. [Doc. 92].

The Court does not have specific information about Alexander Burkhalter's litigation experience. However, based on his years of experience, it appears that Alexander Burkhalter was a senior associate at the Burkhalter Law Firm while working on this case. Generally, senior associates are awarded a higher hourly rate than younger, less experienced associate attorneys. Therefore, given his experience, professional background, and familiarity with employment law matters, the Court finds an hourly rate at the higher end of those awarded to associate attorneys in

---

However, the Court "must consider the prevailing market rate in the relevant community, which for fee purposes is the legal community within the court's territorial jurisdiction or venue." *Decker v. Subway Sandwiches and Salads, LLC*, 2014 WL 791795, at *3 (E.D. Tenn. Feb. 26, 2014) (collecting cases); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("[T]hus, the 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices."). Thus, because the Western District of Tennessee is not in this Court's territorial jurisdiction or venue, the Court will not consider *Monroe* in determining whether the requested hourly rate for Ms. Srey is reasonable.

[6] Plaintiffs direct the Court to Alexander Burkhalter's online biography as evidence of his qualifications and experience. *See* https://www.burkhalterlaw.com/d-alexander-burkhalter-iii (last visited Aug. 25, 2022).

this District is appropriate.

Accordingly, the Court finds that an hourly rate of $265.00 is reasonable. This rate is consistent with those rates previously awarded to associate attorneys with similar litigation experience. *See McPeters*, 2021 WL 1033240, at *9, n.5 (awarding $265.00 per hour to associate attorneys who were close to becoming partners, but had not yet reached that status during the course of their representation); *L.H. v. Hamilton Cnty. Dep't of Educ.*, 356 F. Supp. 713 (E.D. Tenn. 2019) (awarding $275.00 per hour to an associate who had nine years of experience); *Almanza v. Barr*, 2019 WL 13159729, at *9 (E.D. Tenn. Aug. 5, 2019) (awarding $260.00 per hour to an attorney who had only been practicing employment law for approximately eight years); *EEOC v. Dolgencorp*, 277 F. Supp.3d 932 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018) (awarding $250.00 per hour to an attorney with ten years of experience). And, as further discussed below, this hourly rate reflects Alexander Burkhalter's advanced experience compared to the other associate attorney on this case—Caroline Bressman.

Caroline Bressman was licensed to practice law in 2018, and is an associate attorney on the wage and hour litigation team at Nichols Kaster. [Doc. 90 at 8]. Ms. Bressman's practice "has focused almost exclusively on class and collective wage and hour actions." [*Id*.]. She routinely manages discovery in FLSA collective actions and handles FLSA certification motions. [*Id*.]. Ms. Bressman is a contributing editor to the FLSA Midwinter Report of the American Bar Association Section of Labor and Employment Law and presents at both national and local programs on federal wage and hour protections. [*Id*.].

During her representation in this matter, Ms. Bressman was roughly a second through fourth year associate. Though Ms. Bressman has less experience than Alexander Burkhalter, her legal career has been more directed. Ms. Bressman has focused almost exclusively on wage and

hour litigation; she regularly publishes and presents in this field. Thus, the Court finds that it would be reasonable to conclude that Ms. Bressman is working diligently to become an expert in this area of employment law.

The Court has no doubt that Ms. Bressman is a very skilled, capable attorney. However, the Court has not found, nor have Plaintiffs provided, authority from this District awarding an associate attorney an hourly rate of $325.00. Given her limited experience, the Court will assess Ms. Bressman's hourly rate at $215.00. This is a higher rate than those typically awarded to associate attorneys with limited experience in this District; however, the Court finds a higher rate is justified given Ms. Bressman's efforts to specialize in FLSA wage and hour litigation.[7] *See McPeters*, 2021 WL 1033240, at *8-9 (declining to award $300.00 per hour to upper-level associates); *Kova Bristol Tenn 1894, LLC v. Bristol Pres., LLC*, 2020 WL 13443413, at *2 (E.D. Tenn. Oct. 5, 2020) (awarding $200.00 per hour to the associate attorney assigned to the case); *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 2017 WL 9251309, at *5 (E.D. Tenn. Aug. 7, 2017) (awarding $205.00 per hour to an associate attorney with three years of experience who had "practiced employment law almost exclusively").

Overall, the Court finds that all of Plaintiffs' counsel in this matter are extremely competent and skilled. However, the hourly rates requested by Plaintiffs' counsel exceed the amounts consistently awarded in the Eastern District of Tennessee. For the reasons above, the Court concludes: (1) **David Burkhalter shall be awarded $425.00 per hour** instead of $475.00; (2) **Rachhana Srey shall be awarded $425.00 per hour** instead of $525.00; (3) **Alexander Burkhalter shall be awarded $265.00 per hour**, as requested; and (4) **Caroline Bressman shall be awarded $215.00 per hour** instead of $325.00.

---

[7] The Court also notes that Defendants agree this is the appropriate hourly rate for Ms. Bressman. [Doc. 98 at 14].

b.  Litigation Support Staff

Plaintiffs also seek approval of an hourly rate of $175.00 for the litigation support staff who assisted with this case, including paralegals and "class action clerk[s]." [Docs. 90 at 9, 91 at ¶¶ 20-22]. Plaintiffs explain that Nicholas Kaster assigns teams of attorneys and staff to litigate wage and hour cases. [Doc. 91 at ¶ 19]. Litigation support staff "perform crucial case work in order to promote efficient use of attorney time; most significantly, class action clerks performed the essential work of interviewing clients, gathering information about clients' damages, and communicating with clients during the FLSA notice period and settlement notice period." [Doc. 90 at 11-12]. If the work was not performed by litigation support staff, an attorney would have to bill the same work at a higher rate. [*Id*.].

Defendants argue the proposed $175.00 hourly rate for the litigation support staff is "completely disproportionate to the local market rate for law clerks and paralegals in the Eastern District of Tennessee." [Doc. 98 at 16]. Defendants contend that the hourly rates for such individuals range from $75.00 to $125.00 depending on their experience; and, because Plaintiffs failed to produce evidence concerning the experience of the litigation support staff that worked on this case, the hourly rate should be reduced to $75.00. [*Id*. at 17].

As a threshold matter, Plaintiffs urge the Court to apply a national hourly rate for the litigation support staff. [Doc. 109 at 12]. However, for the same reasons explained above, the Court declines to apply a national hourly rate. *Supra* at 15-16. That is, Plaintiffs have failed to demonstrate that it was reasonable to hire an out-of-town law firm to handle this FLSA case in the first instance.

In *Eagle Supply and Mfg., L.P.*, this Court observed that an hourly rate of $178.00 for paralegals and staff was "unusually high for East Tennessee." 2018 WL 5317932, at *9 (collecting

22

cases). This District generally awards hourly rates below $100.00 to paralegals and support staff.[8] In deciding the appropriate hourly rate, courts consider the educational background, experience, and skillset of the staff members who assisted on the case. *See Almanza*, 2019 WL 13159729, at *10-11 (analyzing the background, education, and experience of legal assistants and law clerks in determining the appropriate hourly rate for their work).

Here, Plaintiffs have not provided specific information regarding the background, experience, or skillset of the litigation support staff that worked on this case. Plaintiffs merely note that "[c]lass action clerks are all college graduates." [Doc. 91 at ¶ 21]. Because Plaintiffs failed to provide detailed information about the paralegals and support staff that worked on this case, the Court has no basis to determine whether an hourly rate of $175.00 is reasonable. Nevertheless, because this District has never awarded such a steep hourly rate to paralegals and support staff, the Court declines to award this hourly rate. Given the lack of relevant background information, and the relevant decisions from this District, the Court finds that an hourly rate of $75.00 is reasonable for the litigation support staff. *Supra* at n.8; *see also Gunter v. Bemis Co., Inc.*, 2019 WL 3526337, at *8 (E.D. Tenn. July 25, 2019) ("Based upon the Court's own experience with customary paralegal rates in this District, the Court will recommend a $75.00 hourly rate as an appropriate paralegal rate—especially given that Plaintiff has provided no

---

[8] *Farmer v. Upchurch*, 2022 WL 1521521, at *5 (E.D. Tenn. Mar. 4, 2022) (approving hourly rate of $100.00 for a paralegal from a Chattanooga law firm); *CapitalPlus Constr. Servs., LLC v. Blucor Contracting, Inc.*, 2021 WL 5710835, at *3 (E.D. Tenn. Nov. 10, 2021) (approving hourly rates of $80.00 and $95.00 for paralegals); *Almanza*, 2019 WL 13159729, at *10 (approving hourly rate of $95.00 for senior legal assistants and law clerk); *Herring v. SCI Tenn. Funeral Servs.*, 2018 WL 2406008, at *8 (E.D. Tenn. May 4, 2018) (recommending that the paralegal's rate be reduced from $125.00 per hour to $90.00 per hour), report and recommendation adopted, 2018 WL 2407192 (E.D. Tenn. May 24, 2018); *Schaeffer v. Jackson-Schaeffer*, 2018 WL 2075335, at *5 (E.D. Tenn. Apr. 16, 2018) (reducing paralegal's rate from $160.00 per hour to $75.00 per hour), report and recommendation adopted, 2018 WL 2074178 (E.D. Tenn. May 3, 2018); *Dolgencorp, LLC*, 2017 WL 9517513, at *7 (recommending the rate of a paralegal, who had thirty years of experience in employment litigation, be reduced from $150.00 to $75.00 per hour), report and recommendation adopted, 277 F. Supp. 3d 932 (E.D. Tenn. 2017), aff'd 2018 WL 3734283 (6th Cir. Aug. 7, 2018); *Flack v. Knox Cty., Tenn.*, 2017 WL 627460, at *5 (E.D. Tenn. Jan. 24, 2017) (recommending that a paralegal who had a law degree should be awarded $95.00 per hour as opposed to the requested $140.00 per hour), report and recommendation adopted, 2017 WL 627436 (E.D. Tenn. Feb. 14, 2017).

information about the experience of the paralegals whose time is being billed.") Accordingly, the **hourly rate for Plaintiffs' litigation support staff should be reduced to $75.00.**

### 3. *Reasonable Hours Expended*

Plaintiffs maintain that the number of hours incurred by the attorneys and support staff are reasonable. [Doc. 90 at 10]. Ms. Srey avers that Plaintiffs' Counsel kept a contemporaneous record of each time entry, including the date, the attorney or support staff member responsible for the entry, the number of hours billed, and a detailed description of the activity completed. [Doc. 91 at ¶ 23]. Ms. Srey further explains Counsel exercised their billing judgment and eliminated certain entries that were arguably unnecessary, purely clerical, or inadequately detailed. [*Id*. at ¶ 24]. In total, Plaintiffs seek compensation for 162 hours of attorney time and 278.4 hours of staff time. [Doc. 90 at 11].

Defendants raise numerous objections to the hours expended in this case. [Doc. 98]. The Court will address each objection in turn below.

### a. Vague

Defendants contend that several of the time entries are too vague for the Court to determine whether a reasonable amount of time was spent on this case. [Doc. 98-1]. Plaintiffs claim the entries are sufficiently detailed, as each entry contains a brief description of the task completed for the instant litigation. [Doc. 109 at 13-14].

The Sixth Circuit has provided "in assessing fees, district courts are not required to act as 'green-shade accountants' and 'achieve auditing perfection' but instead but simply do 'rough justice.'" *The Ne. Ohio Coal. for the Homeless*, 801 F.3d at 603 (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Attorneys "have an obligation to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case."

24

*Imwalle*, 515 F.3d at 552-53 (6th Cir. 2008). Attorneys are "not required to record in great detail how each minute of his time was expended," but should at least "identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437, n.12; *Imwalle*, 515 F.3d at 553 (approving billing entries such as "Conference with," "Research," "Review file," "Review documents,").

The Court finds that the entries Defendants have identified certainly could be more detailed; however, they are not so vague as to prevent the Court from determining whether the hours expended were reasonable. All of the entries concern "e-mail" communications and identify the sender by their billing initials. [Doc. 98-1 at 1-2]. Some of the entries also identify the subject-matter of the communications (no recipient); and other entries also identify the recipient of the e-mail (no subject-matter). [*Id*.] The entries only bill for 0.1 or 0.2 hours, with the exception of one entry for 0.4 hours. [*Id*.].[9]

The record indicates that the litigation team communicated primarily via e-mail while working on this matter. Given this fact, it does not appear an undue amount of time was spent on the e-mail communications that Defendants have identified as vague. By identifying the sender and either the recipient or the subject matter of the e-mail, and given the minimal amount of time billed for each time entry, the Court has sufficient information to determine whether the hours were reasonably expended. The Court finds that these entries do not need to be excluded as impermissibly vague

Relatedly, Defendants argue "billing entries for persons who were not identified" must be eliminated. [Doc. 98 at 19]. Defendants claim "there is no staff listed whose first and last name matches TNA initials in the summary provided by Plaintiff" and thus, "the entirety of TNA

---

[9] The sole entry for 0.4 hours was an e-mail exchange between co-counsel Rachhana Srey and Alexander Burkhalter. [Doc. 98-1 at 1].

entries and corresponding fees (7.4 hours and $1295) must be excluded." [*Id.*; Doc. 98-1 at 1]. Plaintiffs maintain that their records "included a summary page with the full names of each timekeeper and their role" but, in attempt to further assist the Court with review, Plaintiffs provided a table with the name, corresponding initials, and role of each timekeeper. [Doc. 109 at 5].

The Court is satisfied with the sum of the information Plaintiffs have provided. That is, the Court has adequate information to determine the identity of each timekeeper, including TNA; and thus, can determine whether the hours expended by each timekeeper, including TNA, were reasonable. Accordingly, in light of the supplemental material provided by Plaintiffs, the Court declines to eliminate TNA's hours on the basis of ambiguity.

Finally, Defendants object to billing entries for work related to "LSAs". [Doc. 98-2 at 13]. Defendants argue that "LSAs" is an undefined term; thus, they cannot decipher what tasks were completed or evaluate the reasonableness of these entries. [Doc. 98 at 19]. In the spirit of compromise, Plaintiffs agree to eliminate entries related to litigation staff members working on receiving and processing legal service agreements ("LSAs"), totaling a reduction of **1.2 hours**. [Doc. 109 at 14]. Accordingly, the Court will exclude this time from the ultimate award determination.

### b. Communications with Co-Counsel

Defendants object to three billing entries that reference Bryce Ashby. [Docs. 98 at 20, 98-1 at 2]. Defendants contend that entries for Bryce Ashby's work should be excluded, as (1) Mr. Ashby is not part of the fee application; and (2) Plaintiffs assured they would not seek to recover fees for Mr. Ashby's work. [*Id.*]. Plaintiffs argue Defendants misconstrue the billing entries in advancing this argument. [Doc. 109 at 14]. Plaintiffs claim the entries do not seek compensation for Mr. Ashby's work, but instead, seek compensation for the time Alexander Burkhalter spent

communicating with Mr. Ashby about the complaint and the need for Nichols Kaster's expertise on this case. [*Id*.].

Defendants' objection to the billing entries that identify Bryce Ashby is not well-taken. Although Bryce Ashby entered in appearance in this case, Plaintiffs clearly are not seeking to recover fees on Mr. Ashby's behalf. The identified entries were billed by Alexander Burkhalter and evidence that he was collaborating with Mr. Ashby about case strategies. [Doc. 98-1 at 2]. Furthermore, Plaintiffs have submitted no records of Mr. Ashby's billed time, nor evidence concerning Mr. Ashby's hourly rate.

Communications with co-counsel for a reasonable purpose related to the litigation are generally an acceptable billing expense. *See Intercommunity Just. & Peace Ctr. v. Registrar, Ohio Bureau of Motor Vehicles*, 2020 WL 3545762, at *4-5 (S.D. Ohio June 30, 2020) (collecting cases); *Sweeney v. Crigler*, 2020 WL 7038977, at *3 (E.D. Ky. Oct. 27, 2020) ("[T]elephonic conferences between attorneys are compensable."); *Bourke v. Beshear*, 2016 WL 164626, at *4 (W.D. Ky. Jan. 13, 2016) (collecting cases). Accordingly, the Court declines to the exclude the hours that Alexander Burkhalter billed for his communications with Bryce Ashby about case strategies.

c. Improper Lead Generation

Defendants object to certain billing entries as "improper lead generation" and "business overhead." [Doc. 98-2 at 1-6]. However, as Plaintiffs note, the entries that Defendants dispute were not undertaken to promote the law firm's general business. [Doc. 109 at 15]. Instead, the entries directly relate to litigation staff members' efforts to publicize information regarding the instant litigation and availability of an opt-in class, communicate with potential class members, and update internal records pertaining to the class. The Court agrees with Plaintiffs that such tasks

are essential to FLSA wage and hour litigation that involves an opt-in class; therefore, such time is compensable.

### d. Clerical Work

Defendants object to numerous billing entries as seeking compensation for work that is "clerical in nature." [Docs. 98 at 20; 98-2 at 7-12]. However, Defendants offer no explanation regarding how the tasks are "clerical." [*Id.*].

District courts in this Circuit have explained that "[p]urely clerical tasks, meaning tasks where no legal knowledge is required, should not be included in an award of attorneys fees." *Sweeney*, 2020 WL 7038977, at *3; *Lay v. Astrue*, 2012 WL 5988822, at *5 (E.D. Ky. Nov. 29, 2012) ("[c]lerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence."); *Dolgencorp, LLC*, 2017 WL 9517513, at *10 (collecting cases). Accordingly, the Court will decline to award fees for time spent on purely clerical matters that do not require the exercise of legal expertise or judgment. However, the Court will award fees for tasks that reasonably could have required some legal skill or knowledge.

The Court has reviewed the billing entries that Defendants identified as clerical. While the Court finds that several of the entries are truly clerical and should be deducted, the Court does not have a sufficient bases to conclude that other activities were "purely clerical" in nature.

Several of Defendants' objections relate to time that Plaintiffs' Counsel spent reviewing court orders and drafting a retainer agreement—activities that could reasonably require legal expertise and skill. [Doc. 98-2 at 7]. Likewise, Defendants object to the time that Plaintiffs' Counsel spent preparing and reviewing information to be distributed to potential opt-in plaintiffs

—tasks that could reasonably require legal skill and knowledge of the FLSA. [*Id.*]. Accordingly, the Court will overrule Defendants' objections concerning the alleged clerical nature of tasks performed by Plaintiffs' Counsel.

Moreover, the Court finds that the following tasks performed by litigation support staff are not purely clerical: reviewing and processing consent forms, drafting and editing welcome letters and other documents, updating the case webpage with relevant information, e-mailing attorneys, conducting research, and reviewing fees/costs. These tasks could reasonably require legal skill, knowledge, or judgment to complete; thus, they are not purely clerical and are compensable.

However, several of Defendants' objections relate to time that litigation support staff spent mailing documents to opt-in plaintiffs and filing consent forms. The Court recognizes that such tasks are essential and necessary aspects of litigating an FLSA opt-in collective action; however, simply mailing and filing documents does not reasonably require legal skill or knowledge.[10] Similarly, updating client information, uploading documents, downloading docket entries, and calendaring deadlines do not require legal knowledge. Accordingly, the Court will exclude these billing entries as non-compensable clerical activities, totaling a reduction of **29.7 hours** for clerical work performed by litigation support staff.[11]

---

[10] The Middle District of Tennessee found that hours spent "mailing correspondence" and "organizing documents and case file database" in a similar FLSA case were not purely clerical tasks. *Monroe v. FTS USA, LLC*, 2014 WL 4472720, at *6 (M.D. Tenn. July 18, 2014). In making this finding, the *Monroe* court noted that "Plaintiffs provide[d] persuasive case law and detailed facts as to why the hours…[were] not purely clerical tasks." *Id.* Here, however, Plaintiffs have merely provided a cursory explanation and one non-binding case to support their position that these hours should be compensated in full. [Doc. 109 at 16].

[11] *See B & G Mining, Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008) ("[w]hile reviewing correspondence can constitute legal work, receiving and filing correspondence presumably constitutes clerical work.") *Almanza*, 2019 WL 13159729 at *16 (recommending entries for updating the calendar and uploading documents should be deducted as clerical); *Dolgencorp, LLC*, 2017 WL 9517513, at *10 (recommending that entries for mailing documents, scanning and uploading documents, and filing motions on the record should be deducted as purely clerical); *EEOC v. Whirlpool Corp.*, 2011 WL 3321291, at *7 (M.D. Tenn. Aug. 2, 2011) (finding billing entries for copying files, organizing documents, and mailing correspondence were classifiable as clerical); *Gibson v.*

e.   Duplicative Work

Defendants object to numerous billing entries as duplicative. [Docs. 98 at 21, 98-3].[12] However, Plaintiffs maintain that their timesheets do not reflect duplicative work. [Doc. 109 at 17-18]. Specifically, Plaintiffs claim that it was reasonable for multiple attorneys to bill for the same task, as (1) partners oversee the tasks performed by less experienced attorneys; and (2) attorneys regularly meet with members of the litigation support staff to delegate tasks. [*Id*.]. Further, Plaintiffs contend that there are multiple entries related to consent forms because Plaintiffs' Counsel received nearly 100 consent forms during this litigation that needed to be processed. [*Id*.].

The Sixth Circuit has explained, "[m]ultiple-lawyer litigation is common and not inherently unreasonable." *The Ne. Ohio Coal. for the Homeless*, 831 F.3d at 706-07 (internal citations omitted). "There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Id*. "Hours spent in reviewing records, talking to other lawyers or experts, preparing legal documents and the like cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed." *Id*.

Defendants point to instances where more than one lawyer billed for meetings, client communications, and editing/reviewing documents. [Doc. 98-3]. However, Defendants do not provide any authority from this Circuit providing that when multiple attorneys work on a task, only one attorney can bill for the time. The Court has reviewed the billing entries, as well as

_____

*Scott*, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014) (declining to award attorney's fees for "organiz[ing] file," "check[ing] public records," "copy[ing] and send[ing] documents to clients" because these are "purely clerical" services).

[12] Defendants' position regarding duplicative work and block billing is unclear, as they lump both objections together in a single exhibit with unrelated, mismatched headings. [Doc. 98-3]. Nevertheless, the Court understands the difference between duplicative work and block billing and has interpreted Defendants' exhibit accordingly.

Plaintiffs' Counsel's justification for such entries, and finds that Plaintiffs have demonstrated it was reasonable for multiple attorneys to work on these tasks.

First, as to entries related to drafting the Complaint, Plaintiffs' Counsel explained that Alexander Burkhalter drafted the pleading, as he was involved in the interview of the initial Named Plaintiff, and Rachhana Srey, a more experienced attorney, assisted in revising the pleading. Given their varying levels of familiarity with the matter and overall litigation experience, the Court finds that it was reasonable for both attorneys to bill for their time drafting and revising the Complaint.

Second, as to entries for work performed by more than one attorney (meetings, client communications, and editing/reviewing documents), Plaintiffs' Counsel explained that it is necessary for senior partners to supervise work performed by less experienced attorneys. The Court notes that in these instances, both attorneys largely billed for different time increments: the senior partner regularly billed for less time than the associate attorneys. This suggests that both attorneys put forward distinct, independent efforts to accomplish the same general task and did not simply bill for identical work.

Third, as to the interoffice conferences among attorneys and litigation support staff, Plaintiffs' Counsel explained that these meetings were necessary to discuss case strategies and delegate tasks. Plaintiffs' Counsel clarified that these meetings increased efficiency in the litigation process. The Court finds that such meetings were reasonable. The Court understands that regular interoffice meetings are often necessary to discuss strategy and developments in the case; and to ensure that the case is adequately progressing.

Fourth, as to multiple entries regarding consent forms, the Court does not find that the billed time is unreasonable. As Plaintiffs' Counsel explains, they received nearly 100 consent

forms in this case. Thus, the fact that Plaintiffs' billing records include numerous entries for processing and reviewing consent forms is not surprising or troublesome.

Finally, as to all of these entries identified by Defendants as "duplicative", it does not appear that an undue amount of time was spent on tasks performed by multiple attorneys. [Doc. 98-3]. Only a handful of the entries bill for more than an hour, and those entries involve more time intensive tasks. It appears Plaintiffs' Counsel and the litigation support staff were efficient with their time. Furthermore, given the number of Plaintiffs in this case, extensive client communications, document review, and case meetings were required. Thus, the Court finds that the use of multiple attorneys and litigation support staff members was not unreasonable.

Accordingly, having reviewed the entries identified as "duplicative", the Court does not believe a reduction is appropriate.

f. <u>Block Billing</u>

Defendants object to several billing entries as improper block billing that is not compensable. [Docs. 98 at 21, 98-3].

"Block billing is a practice in which 'each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Richards v. Johnson & Johnson*, 2010 WL 3219138, at *9 (E.D. Tenn. May 12, 2010) (quoting *Robinson v. City of Demond*, 160 F.3d 1275, 1283, n.9 (10th Cir. 1998)). "While the practice of block billing is generally discouraged, block billing 'does not require a court to reduce a fee award.'" *Grant v. Shaw Env't, Inc.*, 2013 WL 1305599, at *7 (E.D. Tenn. Jan. 30, 2013) (quoting *Oakley v. City of Memphis*, 2012 WL 2682755, at *3 (W.D. Tenn. June 14, 2012)). The Sixth Circuit has held that block billing can be sufficient "so long as the description of the work performed is adequate." *Smith*, 592 F. App'x. at 371 (collecting cases).

Defendants are correct that several of the entries submitted by Plaintiffs technically constitute block billing, thus making it more difficult to determine whether the billed time was reasonably expended. Both Plaintiffs' Counsel and litigation support staff members submitted entries that group together various tasks. However, the Court finds that no fee reduction is necessary. The entries at issue are not vague or imprecise. The entries adequately detail the exact work performed by the timekeeper; and all of the work grouped in one entry is related to the same general task. Thus, the Court can discern from the level of detail provided in the time entries whether the time billed was reasonable. Furthermore, the Court notes that the "block" entries bill for short periods of time, thus supporting a finding that the time was not disproportionate to the tasks described.

Accordingly, the Court concludes that a reduction of the fee award for block billing is not required.

### g.  Work Performed After the Opt-In Period

Defendants argue that Plaintiffs cannot recover fees for work performed for potential clients after the close of the opt-in period. [Docs. 98 at 22-23; 98-4]. Specifically, Defendants note that the opt-in period expired on October 6, 2020; and thus, Defendants argue that it was unreasonable for Plaintiff to continue billing for communications with potential clients about this case thereafter. [*Id.*].

In the spirit of compromise, Plaintiffs' Counsel "agrees to eliminate entries related to communications with potential clients…between the dates of 12/1/2020 and 7/30/2021, which **totals a reduction of 4.1 hours**." [Doc. 109 at 16] (referring Doc. 98-4]. Therefore, the Court will deduct this billed time from the ultimate fee award. However, as to communications with potential clients from 10/8/2020 until 11/24/2020, Plaintiffs maintain that this time is

compensable. [*Id*.].

Plaintiffs' Counsel explain that they told Defendants each time they received a consent form after the notice period expired, stated their intention to file the late consent form, and requested that Defendants consider the consent form to be timely to avoid motion practice and the risk of an additional lawsuit. [Doc. 109 at 15-16]. Plaintiffs note that Defendants opted to include the clients who returned late consent forms in the settlement. [*Id*.]. Specifically, in their brief, Defendants explained that they "opted not to [challenge] the belated consent forms due to the uncertainty of success and the costs involved as it would have distracted from settlement efforts." [Doc. 98 at n.3].

In light of these facts, Defendants' objection is not well-taken. Defendants cannot have their cake and eat it too. That is, Defendants cannot elect to consider the late-filed consent forms for purposes of facilitating settlement only to object to the time Plaintiffs' Counsel billed for communicating with the individuals who filed those late consents. Because Defendants opted to consider the late filed consents for settlement purposes, and thus those individuals were part of this collective action, the Court declines to reduce the fee award on this basis.

Overall, as demonstrated above, the Court finds that Plaintiffs' requested fees are not reasonable, and warrant some discount. The Court finds that Plaintiffs are reasonably entitled to recover **$ 68,780.50** in attorneys' fees. This award accounts for the reduced hourly rates and the following reductions:

    (1) **0.9 hours** for time billed by Zachary Burkhalter;

    (2) **1.2 hours** for time litigation support staff worked on receiving and processing legal service agreements ("LSAs");

    (3) **29.7 hours** for time litigation support staff performed clerical work;

    (4) **.1 hour** for time Caroline Bressman spent communicating with potential clients from 12/1/2020 until 7/30/2021; and

    (5) **4.0 hours** for time litigation support staff spent communicating with potential clients from 12/1/2020 until 7/30/2021.

## IV.    CONCLUSION

For the reasons above, Plaintiffs' Unopposed Motion [Doc. 88] is **GRANTED** and the proposed settlement agreement is **APPROVED**. The Clerk of Court is **DIRECTED** to close the case.

Additionally, Plaintiffs' Motion for Attorney Fees and Costs is **GRANTED IN PART**. Plaintiffs are entitled to recover **$2,947.69** in uncontested, out-of-pocket litigation costs; and, with Plaintiffs' voluntary reductions and the Court's discounts as explained above, a total award of **$ 68,780.50** in attorneys' fees. The Court arrives at this calculation for attorneys' fees as follows:

| Timekeeper | Requested Hours[13] | Time Reduction | Hourly Rate | Award |
|---|---|---|---|---|
| D. Burkhalter | 6.8 | 0.0 | $425.00 | $ 2,890.00 |
| A. Burkhalter | 37.5 | 0.0 | $265.00 | $ 9,937.50 |
| Z. Burkhalter | 0.9 | 0.9 | N/A | $ 0.00 |
| R. Srey | 60 | 0.0 | $425.00 | $ 25,500.00 |
| C. Bressman | 56.8 | 0.1 | $215.00 | $ 12,190.50 |
| Support Staff | 278.4 | 34.9 | $75.00 | $ 18,262.50 |

**SO ORDERED.**

/s/  *Charles E. Atchley Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**

---

[13] The Court pulled this information from Plaintiffs' Summary of Attorneys Fees. [Doc. 91-1 at 2].